UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEROY G. HAGENBUCH, | ) | |
| | ) | |
| PLAINTIFF, | ) | No. 13 C 7042 |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| SONRAI SYSTEMS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**MEMORANDUM OPINION AND ORDER**

LeRoy G. Hagenbuch has sued defendant Sonrai Systems ("Sonrai") for allegedly infringing U.S. Patent No. 5,644,489 (the "'489 Patent") and U.S. Patent No. 5,416,706 (the "'706 Patent") (collectively, "Patents-in-Suit"). R. 1. Sonrai has moved for summary judgment, arguing that the Patents-in-Suit expired on June 13, 2006 pursuant to a terminal disclaimer filed in a parent application of the Patents-in-Suit. For the following reasons, the Court grants Sonrai's motion for summary judgment.

**BACKGROUND**

Hagenbuch is the inventor and owner of numerous patents. R. 1 ¶¶ 2, 11, 14. The Patents-in-Suit relate to certain types of material collection systems. R. 1 ¶¶ 15, 14; *see also* R. 1-2. The Patents-in-Suit arose from a series of "continuation applications" stemming from U.S. Application Serial No. 08/102,531 (the "'531 Application") (issued as U.S. Patent No. 5,327,347 (the "'347 Patent")). *See infra* Part II. The '531 Application itself was the result of a string of "file wrapper"

continuations under then 37 C.F.R. § 1.62 ("Rule 62").[1] A file wrapper continuation under Rule 62 had the effect of abandoning the previous application but importing all of the contents from that previous application, including the prosecution history, into a new application. *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F. 3d 1368, 1371 n.1 (Fed. Cir. 2000) ("[A] 37 C.F.R. § 1.62 (1995) Rule 62 continuation application required the application to 'utilize the file wrapper and contents of the prior application.'") (quoting 37 C.F.R. § 1.62(e)). When an applicant filed a file wrapper continuation, the application received a new application number. *See In re Bogese*, 303 F.3d 1362, 1364 (Fed. Cir. 2002). In this case, the '531 Application was originally U.S. Application Serial No. 351,179 ("'179 Application").

The patent system only permits a single patent to be granted for a single invention. *In re Lonardo*, 119 F.3d 960, 965 (Fed. Cir. 1997). If a patent examiner suspects that an inventor is trying to extend the monopoly of a previous patent by filing a new patent with similar claims, he will reject the application for "obviousness type double-patenting." *Id.* During the prosecution of the '179 Application, Hagenbuch faced an "obviousness type double-patenting rejection" in light of his previous patent, U.S. Patent No. 4,839,835 (the "'835 Patent"). R. 40 ¶ 2. One of the ways to cure an obviousness type double-patenting rejection is to file a terminal disclaimer under 35 U.S.C. § 253 during the prosecution of the patent. *In re Longi*, 759 F.2d 887, 894 (Fed. Cir. 1985). A terminal disclaimer disclaims any

---

[1] 37 C.F.R. § 1.62 was removed and "reserved" from the C.F.R. effective December 1, 1997. Manual of Patent Examining Procedure ("MPEP") § 201.06(b) (9th Ed., Mar. 2014).

period of time after the expiration of the previous patent, meaning that the current patent will expire at the same time as the previous patent. *See* 37 C.F.R. § 1.321(b). In response to the rejection, Hagenbuch filed a terminal disclaimer modeled on the 1993 MPEP's form disclaimer:

> I hereby disclaim the terminal part of any patent granted *on the above-identified application*, which would extend beyond the expiration date of the full statutory term of United States Patent No. 4,839,835 . . . .

R. 33-15 at 2 (emphasis added). Hagenbuch abandoned the '179 application, filed then abandoned another Rule 62 application (Application No. 964,126 ("'126 Application")), then filed the '531 Application. During the prosecution of that application, the examiner reinstated the double-patenting rejection because the disclaimer in the parent application "was worded in such that it did not apply to any subsequently filed applications claiming benefit under 35 U.S.C. § 120." R. 33-16 at 3. The examiner added that "upon receipt and approval of the new terminal disclaimer, this application can be placed in a condition for allowance." *Id*. at 4. Hagenbuch then filed a new disclaimer:

> I hereby disclaim the terminal part of any patent granted on the above-identified application *or any continuation of it under 35 U.S.C. subsection 120*, which would extend beyond the expiration date of the full statutory term of United States Patent No. 4,839,835 and hereby agree that any patent so granted on the above-identified application *or continuation of it* shall be enforceable only for and during such period that the legal title to the patent shall be the same as the legal title to United States Patent No. 4,839,835. I understand that this agreement runs with any patent granted on the above-identified application *or continuation of it* and that it is binding upon the grantor, its successors or assigns.

R. 38 ¶ 8 (emphasis added). The USPTO issued a notice of allowance approximately a month after Hagenbuch filed the terminal disclaimer without any further remarks from the examiner. R. 37-1 at 15-16. The '531 Application issued on July 5, 1994 as U.S. Patent No. 5,327,347 (the "'347 Patent"). R. 33-2.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the non-moving party must produce more than a "mere scintilla of evidence," meaning "evidence on which [a] jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In ruling on the motion, the Court considers the entire evidentiary record and "view[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party." *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013); *Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 811 (7th Cir. 2011).

## ANALYSIS

Sonrai argues that the terminal disclaimer in the '531 Application applies to the Patents-in-Suit, causing them to expire when the '835 Patent expired on June 13, 2006. If so, the Patents-in-Suit are unenforceable. *See* 35 U.S.C. § 286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim

for infringement in the action."). Hagenbuch argues that the terminal disclaimer applies only to the patent that issued from the '531 Application (i.e., the '347 Patent). R. 37 at 3. If so, his lawsuit is timely.[2] Even if the terminal disclaimer applies more broadly, Hagenbuch argues that the '489 patent is not a "continuation" under 35 U.S.C. § 120.[3]

I. **Whether the Terminal Disclaimer Is Limited to the '347 Patent**

Hagenbuch's argument that the terminal disclaimer only applies to the '347 Patent rests on essentially two grounds. First, Hagenbuch argues that the disclaimer applies to *either* "any patent granted on the above-identified application *or* any continuation of it under 35 U.S.C. subsection 120," but not both. Second, he argues that applying the terminal disclaimer to downstream patents is inconsistent with the version of the MPEP that was effective when he filed the disclaimer.

A. **The Disclaimer's Language.**

Hagenbuch argues that the plain meaning of the word "or" is disjunctive, citing: (1) *Southern Corporation v. United States*, 690 F.2d 1368 (Fed. Cir. 1982); and (2) a patent examiner's ruling during an *ex parte* reexamination of the '706 Patent that Hagenbuch initiated in 2011. In *South Corporation*, the Federal Circuit construed a statute that imposed a duty (fee) on repairs performed in a foreign

---

[2] The USPTO granted the Patents-in-Suit before June 8, 1995, so they would have expired 17 years from their issue date. *See* MPEP § 2701 (9th Ed., Mar. 2014). So, barring the terminal disclaimer, the '489 Patent—issued on July 1, 1997—would have expired on July 1, 2014, and the '706 Patent—issued on May 16, 1995—would have expired on May 16, 2012. Hagenbuch filed this lawsuit on October 1, 2013. R.1.

[3] Hagenbuch effectively concedes that the '706 Patent is a continuation of the '531 Application. R. 38 ¶ 11.

country "upon a vessel documented under the laws of the United States to engage in foreign or coasting trade, or a vessel intended to be employed in such trade." *S. Corp.*, 690 F.2d at 1369 n.1 (quoting 19 U.S.C. § 1466) (internal quotation marks omitted). The plaintiffs in *South Corporation* sued to recover duties that they had paid for repairs on a vessel "documented" to engage in foreign trade, *id.* at 1369-70, but "engaged exclusively in oceanographic research" and "intended solely for that purpose." *Id.* at 1371. The plaintiffs argued that the phrase "to engage" meant "for the purpose of engaging." *Id.* The Federal Circuit rejected this interpretation, noting that the vessel owner's intent is only relevant to the second clause following the disjunctive "or." *Id.* ("The plain language of the statute, however, spells out a dichotomy between vessels 'documented to engage in trade' (whatever may be the changeable purpose of the vessel owner) and vessels not documented but 'intended to be employed' in trade."). The Federal Circuit's interpretation of the phrase "or" in 19 U.S.C. § 1466 is not particularly helpful when interpreting the disclaimer language that Hagenbuch adopted. It is apparent from the court's discussion that the context in which the word "or" appears informs its proper interpretation.

The patent examiner's interpretation of the terminal disclaimer is relevant, but unpersuasive. In an *ex parte* reexamination, Hagenbuch persuaded the examiner that the issuance of the '347 Patent meant that the "conditional 'or' is no longer seen to apply to any continuations." R. 33-18 at 3 (Notice of Intent to Issue Ex Parte Reexam. Cert.). In other words, the patent examiner concluded that the word "or" in the disclaimer is "exclusive": "A or B, but not both." Bryan A. Garner,

*Garner's Dictionary of Legal Usage* 639 (3d ed.). He reasoned that this interpretation was consistent with later prosecutions:

> This is congruous with Office proceedings of several other continuations of the '531 application, some of which were determined to require separate terminal disclaimers (as the terminal disclaimer in the '531 application was not seen to apply), and some of which were seen as patentably distinct (thus not requiring a terminal disclaimer). The '706 patent contains claims that are patentably distinct from those of the '531 application. Therefore, it would be improper to impose the terminal disclaimer on the claims of the '706 patent.

R. 33-8 at 3.

The disclaimer's language does not support the examiner's assumption that the issuance of the '347 Patent automatically triggered the first "condition." (*Cf.* "I hereby disclaim A or B, whichever occurs first"). Indeed, if "or" is read exclusively, then the disclaimer is nebulous: the reader does not know what Hagenbuch is disclaiming. This problem does not arise if the Court construes "or" inclusively: Hagenbuch disclaimed the terminal part of "any patent" granted on the '531 Application, a continuation of the '531 Application, "or both" if both conditions are satisfied.[4] Garner, *supra*, at 639. The USPTO, construing nearly identical language in a different application, also interpreted the clause inclusively:

> The terminal disclaimer language that patent owner chose to employ in their terminal disclaimer filed November 10, 1989 has the effect of terminally disclaiming any terminal portion of the term of a patent granted on the application which matured into the '571 patent *as well*

---

[4] This interpretation is perhaps clearer if the disclaimer is phrased negatively: "I [shall not claim] the terminal part of any patent [A] granted on the above-identified application or [B] any continuation of it under 35 U.S.C. subsection 120 . . . ." It would be a stretch to construe this phrase to permit the patentee to claim [A] or [B], but not both.

>   *as* any application which matures into a patent which claims the benefit under 35 U.S.C. 120 of the application which matured into the '571 patent, i.e., the '803 patent.

R. 33-9 at 4 (PTO Decision on Petition Under 37 C.F.R. § 1.181, Control No. 90/010,955 (*Harvard College*) (emphasis added); *see also President & Fellows of Harvard College v. Lee*, No. 2013-1628, 2014 WL 5463287 (Fed. Cir. Oct. 29, 2014) (affirming the USPTO's decision without specifically addressing this issue); *President and Fellows of Harvard College v. Rea*, No. 1:12-cv-1034, 2013 WL 2152635 (E.D. Va., May 15, 2013) (same). With respect to the later prosecutions, Hagenbuch has not cited evidence indicating that any party raised the issue before he initiated the *ex parte* examination in 2011. And to the extent that the disclaimer may apply to patents with independently patentable claims, that is simply a function of the disclaimer's broad language. As the Court discusses below, there is no statute or regulation stating that a patentee *cannot* disclaim more than would be required to overcome an obviousness-type double patenting rejection. An applicant who only wants to disclaim the terminal part of the "instant application" simply has to use the MPEP's form language. Hagenbuch argues that his patent attorney deviated from the form for convenience. It saved the inconvenience of having to refile a terminal disclaimer if, as Hagenbuch had done in the past, he abandoned the application only to later file it as a file-wrapper continuation. R. 37-2 ¶¶ 16-25. The disclaimer is part of the public record, and it would frustrate the disclaimer's notice function if the applicant's (or his lawyer's) subjective intentions controlled over the disclaimer's plain language.

In sum, the Court concludes that, by its terms, the disclaimer applies to both the '347 Patent and to patents issued from continuations of the '531 Application.

B.  **The 1993 MPEP**

Hagenbuch also argues that in 1993, terminal disclaimers did not—as a matter of law—apply to downstream patents unless the patentee refiled the disclaimer in subsequent applications. R. 37 at 12. In 1993, the regulation implementing 35 U.S.C. § 253 stated:

> A terminal disclaimer, when filed in an application to obviate a double patenting rejection, must be accompanied by the fee set forth in § 1.20(d) and include a provision that any patent granted on that application shall be enforceable only for and during such period that said patent is commonly owned with the application or patent which formed the basis for the rejection.

37 C.F.R. § 1.321(b). The 1993 version of the MPEP contained a form terminal disclaimer applicable only to the "instant application:"

> Petitioner _____, is the owner of \_\_\_\_\_ percent interest in the instant application. Petitioner hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application, which would extend beyond the expiration date of the full statutory term defined in 35 U.S.C. 154 to 156 and 173, as presently shortened by any terminal disclaimer, of Patent No. _____.

MPEP §1490, p.1400-22 (5th Ed. Rev. 15, Aug. 1993). The MPEP explained the effect of a terminal disclaimer as follows:

> A terminal disclaimer filed to obviate a double patenting rejection is effective only with respect to the application identified in the disclaimer. For example, a terminal disclaimer filed in a parent application has no effect on a continuing application claiming filing date benefits of the parent application under 35 U.S.C. 120. If two (or more) pending applications are filed, in *each* of which a rejection of one claimed invention over the other on the ground of obviousness type

> double patenting is proper, the rejection will be made in each application. An appropriate terminal disclaimer must be filed in *each* application.

MPEP § 1490, p.1400-22 (5th Ed. Rev. 15, Aug. 1993) (emphasis in original). According to Hagenbuch, this means that the terminal disclaimer only applies to '347 Patent, notwithstanding the operative disclaimer's express reference to continuations under 35 U.S.C. § 120.

Two courts have addressed this issue with conflicting results. In 2012, Hagenbuch sued a different defendant for allegedly infringing the Patents-in-Suit. *See Hagenbuch v. Otto Envtl. Sys.*, Case No. 12 C 1768 (N.D. Ill. Jan 3, 2013). The defendant argued that the patents had expired, citing the USPTO's decision in *Harvard*. In a brief ruling issued before the Eastern District of Virginia decided the *Harvard* appeal, the court construed the MPEP to require the patentee to file the terminal disclaimer in the particular application against which it was to be effective. R. 33-13 at 2. It denied the defendant's motion to dismiss because there was "no indication from the parties that the disclaimer at issue here was filed in the current application[s]." *Id.* The court acknowledged that the USPTO had concluded in *Harvard* that the applicant's decision to deviate from the standard form rendered § 1460 inapplicable. *See id.*; *see also* R. 33-9 at 9. The court concluded, however, that the USPTO's reasoning was unpersuasive. R. 33-13 at 2. The Eastern District of Virginia decided *Harvard* approximately four months later. On appeal, the patentee made essentially the same argument that Hagenbuch makes here:

> The PTO's position on this issue, however, is inconsistent with the operative provisions of the PTO's [MPEP]. For example, the version of

> the MPEP that was in force when [Patent 2] was filed in 1991 states (in section 1490) that "[a] terminal disclaimer filed to obviate a double patenting rejection is effective **only with respect to the application identified in the disclaimer**" (Ex. 1, MPEP § 1490, 5th ed. Rev. 13, Nov. 1989 (emphasis added). By way of example, that version of Section 1490 states that "a terminal disclaimer filed in a parent application **has no effect on a continuing application** claiming filing date benefits of the parent application under 35 U.S.C. 120" (*id.*) (emphasis added).

R. 33 ¶ 28 (emphasis in original). The USPTO responded that § 1490 explains the effect of a disclaimer utilizing the MPEP's form. R. 33-14 at 32-34. That provision "nowhere purports to lay out a general guidance that a terminal disclaimer in a parent application can never affect a continuing application, even when the continuing application is 'identified' in accordance with the 1989 MPEP statement relied upon by plaintiffs." *Id.* at 34.[5] The *Harvard* court did not specifically analyze this issue in its decision affirming the USPTO's ruling. Nevertheless, it applied the disclaimer as written:

> Notably, at the time of the filing, the USPTO provided a terminal disclaimer template for applicants to fill out with their information. Nonetheless, Harvard chose to draft its own terminal disclaimer rather than use the standard form. The only difference in substance was that the standard form did not mention any downstream applications that might claim the same priority filing date, whereas Harvard's disclaimer expressly states that it apples to "any application which is entitled to the benefit of the filing date" of the subject application.

---

[5] Hagenbuch argues that the patent examiner in *Harvard* cited the incorrect version of the MPEP in his decision. According to Hagenbuch, the provision the examiner relied on—unlike the one in this case and the one that the examiner *should have* applied in *Harvard*—authorized terminal disclaimers applicable to downstream patents. R.37 at 13-18. The Court rejects this argument insofar as Hagenbuch contends that it undermines the USPTO's ultimate decision. It is apparent from the USPTO's opinion, and from its appellate brief, that it considered the operative MPEP provision and concluded that it did not control disclaimers deviating from the standard form. *See* R. 33-9 at 9-10; R. 33-14 at 34.

*Harvard*, 2013 WL 2152635, at *1.

The Court agrees with the *Harvard* court. It is apparent from the context of § 1490 that it referred to a disclaimer modeled on the MPEP's form. There is no basis in either the 1993 MPEP or 37 C.F.R. § 1.321(b) to conclude that a patentee *cannot* disclaim the terminal part of patents issued on continuing applications.[6] The same reasoning applies to the purported requirement of filing the disclaimer in downstream applications. *See* R. 37 at 17-18. The MPEP in effect in 1993 described the effect of a disclaimer that, by its terms, applied only to the "instant application." If there were two or more pending applications, and the examiner made an obvious-type double patenting rejection in each, then the applicant had to file the form disclaimer in each. *See* MPEP § 1490, p.1400-22 (5th Ed. Rev. 15, Aug. 1993). This was simply a function of the form disclaimer's language, not a freestanding requirement that patentees must refile the disclaimer in downstream patents to be effective. Otherwise, the patentee could avoid the consequences of agreeing to disclaim the terminal part of downstream patents simply by not refiling the disclaimer. It would frustrate the purpose of the filing requirement to rewrite the disclaimer years after it entered the public record. Hagenbuch chose to deviate from the standard form, and the language he chose controls. *See Harvard*, 2013 WL

---

[6] Indeed, even under Hagenbuch's interpretation of the disclaimer, it would have applied to downstream patents if no patent had issued on the '531 Application. To conclude otherwise would make the reference to 35 U.S.C. § 120 superfluous.

2152635, at *1.[7] He viewed this language as necessary to get the patent issued—it would be unfair to interpret it now in a way that is inconsistent with its plain language. Consistent with the disclaimer's plain language, the Court concludes that Hagenbuch disclaimed the terminal part of any patent granted on any continuation of the '531 Application.

## II. Whether the Terminal Disclaimer Applies to Both Patents-in-Suit

The parties agree that the '706 Patent is a continuation of the '531 Application. R. 38 ¶ 11. Thus, the Court concludes that the '706 Patent expired on June 13, 2006. Hagenbuch argues, however, that the '498 Patent is not a "continuation" as the terminal disclaimer uses that term. *Id.* at ¶ 10. The terminal disclaimer states that it is effective as to "any continuation of [the '531 Application] under 35 U.S.C. subsection 120." At the time Hagenbuch filed the terminal disclaimer, § 120 read:

> An application for patent for an invention . . . which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date

---

[7] Hagenbuch argues that the Court should narrowly interpret the disclaimer, citing cases holding that the termination of a parent patent for unpaid filing fees does not trigger a terminal disclaimer. R. 37 at 24 (citing *The Boeing Co. v. United States*, 69 Fed. Cl. 397, 424 (Fed. Cl. 2006); *Hoffmann-La Roche, Inc. v. Orchid Chem. & Pharm. Ltd.*, No. Civ.A. 10-4540 SRC, 2011 WL 4433575 (D.N.J. Mar. 17, 2011)). These authorities would be more persuasive if Sonrai was pressing a hyper-technical reading of the terminal disclaimer. But the Court has already found that Sonrai's interpretation is the most natural reading of the disclaimer. The Federal Circuit case that *Boeing* and *Hoffman-La Roche* rely on supports the policy that parties should receive the benefit (and shoulder the burden) of the language they adopt when disclaiming the terminal part of a patent. *See Pharmacia Corp. v. Par Pharmaceutical, Inc.*, 417 F.3d 1369, 1373-74 (Fed. Cir. 2005) (parsing a disclaimer's language to determine the patentee's reasonable expectations based on the language it chose).

of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application *or on an application similarly entitled to the benefit of the filing date of the first application* and if it contains or is amended to contain a specific reference to the earlier filed application.

35 U.S.C. § 120 (1993) (emphasis added). The '489 Patent was filed on June 7, 1995 as U.S. Application No. 475,806 (the "'806 Application"), during the prosecution of Application Ser. No. 403,069 (the "'069 Application"), which Hagenbuch filed on March 13, 1995 and was issued as U.S. Patent No. 5,742,914 (the "'914 Patent") on April 21, 1998. R. 33-3. Thus, the '489 Patent was filed *before* the "patenting or abandonment" of the '069 Application. Likewise, Hagenbuch filed the '069 Application during the prosecution of the '706 Patent, which was filed on March 4, 1994 and issued on May 16, 1995. R. 33-3. Finally, the '706 Patent was filed during the prosecution of the '531 Application. *Compare* R. 33-3 *with* R. 33-2. A table of the relevant patents and dates is shown below:

| **Filing Date** | **Issue Date** |
|---|---|
| August 4, 1993 ('531 Application) | July 5, 1994 ('347 Patent) |
| March 4, 1994 (App. No. 206,531) | May 16, 1995 ('706 Patent) |
| March 15, 1995 (the '069 Application) | April 21, 1998 ('914 Patent) |
| June 7, 1995 (the '806 Application) | July 1, 1997 ('489 Patent) |

So, each patent application was filed during the prosecution of the previous patent application. Also, all of the above patents claim priority to the same patent, U.S. Pat. No. 4,630,227, and refer to one another in their respective prosecution histories and on the face of the issued patents under the heading "Related U.S. Application Data." *See* R. 33-2; R. 33-3. The Court concludes, therefore, that the '489 Patent is a continuation of the '531 Application under § 120's plain language.

Hagenbuch argues that the '489 Patent is too remote from the '531 Application to constitute a continuation. Section 201.07 of the 1993 MPEP stated that a "continuation" is "a second application for the same invention claimed in a prior application and filed before the original becomes abandoned or patented." MPEP § 201.07 (5th Ed., 15th Rev., Aug. 1993). According to Hagenbuch, the '489 Patent does not satisfy this definition because: (1) the '806 Application (issued as the '489 Patent) was the fourth application in the chain, not the "second"; and (2) Hagenbuch filed the '806 Application almost a year after the '531 Application issued as the '347 Patent. R. 37 at 14-15. Neither party adequately explains the apparent tension between the 1993 MPEP's definition of "continuation" and 35 U.S.C. § 120's language. But the MPEP "does not have the force of law," MPEP "Forward" (5th Ed. Rev. 15, Aug. 1993), and there is no indication in the disclaimer that the parties intended to incorporate the MPEP's definition.[8] Instead, the disclaimer specifically refers to 35 U.S.C. § 120, which allows patentees to claim priority to an earlier patent through a chain of applications:

> [A]n application can also claim the benefit of the filing date of an earlier application through a chain of co-pending applications. Even if a new application is not co-pending with the first application, § 120 states that the application can meet the co-pendency requirement if it is "filed before the patenting or abandonment of or termination of

---

[8] Hagenbuch attempts to distinguish between a patent granted "<u>on</u> . . . any continuation" of the '531 Application, which he argues is a "continuation" as the terminal disclaimer uses that term, and a patent granted "<u>from</u>" such an application, which he contends is not. R.37 at 15 (emphasis added). The distinction is elusive, and he has not cited any case law to support it. The Court sees no basis to construe § 120 more narrowly for purposes of the disclaimer than it would in any other context.

proceedings on ... an application similarly entitled to the benefit of the filing date of the first application."

*Encyclopaedia Britannica, Inc. v. Alpine Elec. of Am., Inc.*, 609 F.3d 1345, 1350 (Fed. Cir. 2010). The Court concludes that the '489 Patent issued from a "continuation" of the '531 Application. Thus, the '489 Patent, like the '706 Patent, expired on June 13, 2006. This lawsuit, filed by Hagenbuch on October 1, 2013, was untimely.

## CONCLUSION

For the foregoing reasons, the Court grants Sonrai's motion for summary judgment, R. 31.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 27, 2015